UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY TINCHER,

               Petitioner,

v.                                                    Case Number 08-14078
                                                      Honorable Thomas L. Ludington
BLAINE C. LAFLER,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Randy Tincher, presently confined at Carson City Correctional Facility in Carson City, Michigan, has filed an application for a writ of habeas corpus through counsel. Petitioner was convicted in Wayne County Circuit Court of armed robbery and assault with intent to do great bodily harm less than murder. The trial court sentenced Petitioner to concurrent terms of fourteen to thirty years in prison for the armed robbery and six and a half to fifteen years for the assault. Petitioner alleges that he is incarcerated in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Respondent Blaine C. Lafler responds that Petitioner's claims are procedurally defaulted or without merit. For the reasons explained below, the petition will be denied.

I.

Petitioner was charged with armed robbery and assault with intent to commit murder. The charges arose from allegations that Petitioner and his co-defendant, Christopher Mullins, assaulted Eric Cunningham at a trailer park in Canton Township, Michigan on March 5, 2002, and stole some of Cunningham's personal property. As explained by the Michigan Court of Appeals, Cunningham

met Tincher at a gathering hosted by Natisha Baker. Cunningham sold Tincher some cocaine for $20. Tincher and Mullins later came to Cunningham's trailer and asked for more cocaine. Cunningham claimed that Tincher and Mullins then beat him, and Tincher stabbed him with a steak knife. Afterward, defendants bound Cunningham's hands with an appliance cord, and stole clothes, jewelry, knives, a Play Station, and $400 in cash.

*People v. Tincher*, No. 246891, 2004 WL 1460687 (Mich. Ct. App. June 29, 2004) (unpublished).

On November 5, 2002, a Wayne County Circuit Court jury found Petitioner guilty of armed robbery, Mich. Comp. Laws § 750.529, and assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84, as a lesser-included offense of assault with intent to commit murder. Petitioner was sentenced to fourteen to thirty years in prison for the armed robbery and to a concurrent term of six and one-half to twenty years for the assault.

### A.

In an appeal of right, Petitioner argued that the trial court erred by permitting the prosecutor to read Natisha Baker's testimony from the preliminary examination into the record and by denying defense counsel's request to endorse and call Jimmy Baugh as a defense witness. These issues constitute habeas claims three and four. The Michigan Court of Appeals rejected both claims and affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *See Tincher*, 2004 WL 1460687. On January 31, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Tincher*, 692 N.W.2d 386 (Mich. 2004).

On or about January 16, 2006, Petitioner filed a motion for relief from judgment in which he claimed that his trial attorney was ineffective for failing to present a defense, make objections, move for a continuance, and call witnesses. Petitioner also alleged that the prosecutor committed misconduct, that trial counsel should have objected to the scoring of the sentencing guidelines, and that appellate counsel was ineffective for not raising the claims about trial counsel on direct review.

These issues constitute habeas claims one, two, and five.  The trial court adjudicated Petitioner's claims on the merits and denied Petitioner's motion because Petitioner had failed to establish actual prejudice and entitlement to relief under Michigan Court Rule 6.508(D)(3).  Petitioner raised the same issues on appeal from the trial court's decision.  The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D), *see People v. Tincher*, No. 277654 (Mich. Ct. App. July 17, 2007), and on May 29, 2008, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Tincher*, 748 N.W.2d 880 (Mich. 2008).  Reconsideration was denied on September 9, 2008.  *See People v. Tincher*, 755 N.W.2d 166 (Mich. 2008).

B.

Petitioner filed his habeas corpus petition through counsel on September 23, 2008.  His claims are:  (1) trial counsel was ineffective for failing to present a defense, make objections, move for a continuance, and call witnesses, and appellate counsel was ineffective for failing to raise this issue in the direct appeal; (2) the prosecutor repeatedly mischaracterized the evidence in his closing argument; (3) the trial court erred by granting the prosecutor's request to read Natisha Baker's testimony from the preliminary examination; (4) the trial court erred by denying defense counsel's request to endorse and call Jimmy Baugh as a defense witness; and (5) trial counsel was ineffective for failing to object to the scoring of the Michigan sentencing guidelines, and appellate counsel was ineffective for not raising this issue on appeal.   Respondent argues in an answer to the habeas petition that Petitioner's first, second and fifth claims are procedurally defaulted because Petitioner raised those claims for the first time in his motion for relief from judgment and the State's appellate

-3-

courts rejected the claims on the basis of Michigan Court Rule 6.508(D).[1]

Although the State's appellate courts did deny leave to appeal in brief orders citing Michigan Court Rule 6.508(D), "[b]rief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010). "Rule 6.508(D) has both a procedural and a substantive component," and "citations to a defendant's failure to meet the burden of establishing entitlement to relief can refer to a defendant's failure to meet that burden on the merits." *Id*. at 291. The Court therefore must look to the last reasoned opinion to determine the basis for the state courts' rejection of Petitioner's claim. *Id*. When that opinion appears to rest

---

[1] Michigan Court Rule 6.508(D) reads in relevant part:

(D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

 (b) actual prejudice from the alleged irregularities that support the claim for relief . . . .

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

primarily on federal law, courts must presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment in place. *Id.* at 291-92.

The trial court issued a ten-page, reasoned opinion on habeas claims one, two, and five and relied on *Strickland v. Washington*, 466 U.S. 668 (1984), in its discussion of Petitioner's ineffective-assistance-of-counsel claims. Because the trial court's opinion rests primarily on federal law, this Court presumes that the State's appellate courts left the trial court's reasoned opinion in place and did not invoke a procedural default. Habeas claims one, two, and five therefore are not procedurally defaulted. Even if they were procedurally defaulted, procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and it is more efficient to address the merits of Petitioner's claims than to determine whether they are procedurally defaulted. The Court will proceed to address Petitioner's claims on their merits, using the following standard of review.

II.

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. And "where factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1); *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

III.

A.

Petitioner asserts that the trial prosecutor committed misconduct by repeatedly mischaracterizing the testimony of Natisha Baker and Kevin McCallister during his closing argument.

-6-

1.

Prosecutors may not use improper methods calculated to produce a wrongful conviction, *Berger v. United States*, 295 U.S. 78, 88 (1935), but "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or was so fundamentally unfair as to deprive him of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair. *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)). First, a court must ask whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the conduct or remarks were improper, a reviewing court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.* Four factors are used when making this determination: "(1) whether the evidence against the defendant was strong[;] (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.*

Prosecutors may not misrepresent the facts or assert facts that were never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). They may, however, "argue the record . . . and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402

F.3d 635,  646 (6th Cir. 2005).  The Court cannot reverse a conviction unless the prosecutor's remarks were "so flagrant as to render the entire trial fundamentally unfair."  *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006).

2.

Petitioner contends that the prosecutor improperly stated that prosecution witness Natisha Baker overheard Petitioner planning to rob Eric Cunningham.  According to Petitioner, Ms. Baker merely testified that Petitioner planned to beat the victim, not beat *and* rob him.

Ms. Baker's testimony reads as follows:

Q    [by the prosecutor] Did you hear a conversation between [Petitioner] and [co-defendant] Chris [Mullins]?

A    [by Ms. Baker] Yes.  Bits and pieces.  What I heard was Randy said, you know, let's go over there, and then I heard Chris say, you know, they mumbled something and then Chris said, let's not go over there, dude, let's not go over there.  I don't feel right about this.  Let's not go over there.

Q    Did they say what they were going over there to do?

A    All that was said on the part was that Randy was just going to beat him up.

Q    Okay.  Was he going to take anything from him?

A    All that was said on the part was that Randy was just going to beat him up.

Q    Okay.  Was he going to take anything from him?

A    God, that was so long ago.  He just said it wasn't right that, you know, he wanted his, you know, what he deserved, you know.

Q    What was he talking about?

A    The coke.

Q    Okay.  And you indicated that he was going to go over there and beat

-8-

him up for that?

A      Yes.

(Tr. Oct. 31, 2002, at 119-20.)

In his closing argument, the prosecutor correctly stated that Ms. Baker had said the defendants intended to go in Cunningham's trailer and beat him up. (Tr. Nov. 4, 2002, at 23.) The prosecutor then stated that Ms. Baker had said that Petitioner's plan was to beat up Eric Cunningham and take the stuff:

> Take what I deserve, money and cocaine, she tells you he's talking about. At first Mr. Mullins is, I don't feel good about this. I don't feel good about this. Why is that? He planned on robbing him, planned on beating him up and robbing him. Once he gets to that trailer they're all in agreement.

(*Id.* at 26.) Stating that the defendants planned to beat and rob Cunningham was a reasonable inference from Ms. Baker's testimony that Petitioner "wanted his [cocaine]" and "what he deserved." Even if the prosecutor's remarks amounted to a mischaracterization of Ms. Baker's testimony, the defendants' actual conduct, as described by Eric Cunningham, indicated that they intended to do more than just beat Cunningham. Cunningham testified that Petitioner went into his room and started "trashing stuff" and that Mullins told Cunningham to give him his Play Station and necklace. Both defendants asked where Cunningham's dope and money were, and, in addition to the Play Station and necklace, they took his clothing, a sword, a knife, and money. (Tr. Oct. 29, 2002, at 177-84.) Thus, the prosecutor's comments regarding the defendants' intent could not have misled the jurors.

The evidence against Petitioner was strong, and the prosecutor's comments were not "so egregious as to render the trial fundamentally unfair," *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982), particularly under the "'stringent standards applicable on habeas review.'" *Durr v.*

*Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007) (quoting *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir.

2000), *cert. denied*, __ U.S. __, 128 S. Ct. 1652 (2008).  Therefore, Petitioner is not entitled to relief

on the basis of the prosecutor's remarks about Natisha Baker's testimony.

3.

Petitioner claims that the prosecutor also mischaracterized the testimony of Eric

Cunningham's neighbor, Kevin McCallister.  According to Petitioner, McCallister testified that he

saw two men near Cunningham's trailer on the night of the crime and the men had their hands at

their sides, whereas, the prosecutor claimed that McCallister had said the two men were holding

something.

McCallister did testify on cross-examination by the co-defendant's attorney that the two men

had their hands at their sides.  (Tr. Oct. 30, 2002, at 112.)  He previously testified on direct

examination that the men could have been carrying something and that he did not remember telling

the police whether the men were carrying anything.  (*Id*. at 110.)

McCallister did not testify that he told the police the men were carrying something.  The

prosecutor therefore mischaracterized McCallister's testimony during closing arguments when he

said that McCallister had told the police he saw the men carrying something, but he could not

determine what it was.  (Tr. Nov. 4, 2002, at 69-70.)

Defense counsel, however, objected to the prosecutor's remark, and the trial court stated that

the jury would have to determine what was said.  (*Id*. at 69.)  The trial court also instructed the jury

that the lawyers' statement and arguments were not evidence, but were meant to help the jurors

understand the evidence and each side's legal theories.  (*Id*. at 87.)  A trial court can generally

correct improprieties in a prosecutor's closing argument "by instructing the jury that closing

-10-

arguments are not evidence." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)). Thus, the prosecutor's improper remark does not warrant reversal of Petitioner's convictions.

## B.

Petitioner alleges next that the trial court erred by granting the prosecutor's request to read Natisha Baker's testimony from the preliminary examination into the record. The factual background for this claim was explained by the Michigan Court of Appeals as follows:

> The prosecutor endorsed Baker as a witness for defendants' trial. On the second day of trial, the prosecutor informed the trial court that Baker, who was in the twenty-fourth week of a high-risk pregnancy, had just been taken to the hospital. The prosecutor asked the court to declare Baker unavailable, and allow him to admit Baker's preliminary examination testimony pursuant to MRE 804(b)(1), redacted to exclude hearsay statements. The court responded that it would not declare Baker unavailable until the prosecutor provided medical documentation that she was unable to testify in court. On the third day of trial, the prosecutor supplied a letter from Baker's treating physician, Dr. Bryant, who was not one of the physicians who attended to her in the emergency room. Dr. Bryant indicated that he had ordered bed rest, and that it would pose a "terrible risk" to Baker's unborn child if she testified. Baker was instructed to rest on her side as much as possible and go to Dr. Bryant's office for a follow-up examination. The prosecutor acknowledged that Dr. Bryant had not examined Baker during her emergency. Over Tincher's objections, the trial court ruled that Baker was not available as a witness, and allowed the prosecutor to introduce her preliminary examination testimony.

*Tincher*, 2004 WL 1460687, at *1.

Petitioner claims that the prosecutor failed to show due diligence in seeking to present Baker and failed to meet the standard for use of prior recorded testimony under state law, including Mich. Comp. Laws § 768.26, Michigan Rules of Evidence 804(a)(5) and 804(b)(1), and *People v. Dye*, 427 N.W.2d 501 (Mich. 1988). Petitioner further alleges that the use of Ms. Baker's prior testimony deprived him of his right of confrontation under the Sixth Amendment to the United States Constitution. The Michigan Court of Appeals concluded on review of Petitioner's claim that the

trial court did not err in finding that the prosecutor made a satisfactory showing that Baker was unable to testify due to her condition and that Petitioner's right of confrontation was not violated.

1.

The alleged violations of state law are not a basis for habeas relief because federal habeas courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) (stating that, "[t]o the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review"). The only question is whether Petitioner's right of confrontation was violated.

The Confrontation Clause of the Sixth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The Clause "guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." *Id.* (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-07 (1965)). Ordinarily, testimonial hearsay evidence may not be introduced against a defendant in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the person. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Testimonial evidence" includes prior testimony at a preliminary examination. *Id.*

-12-

2.

Natisha Baker was unavailable at Petitioner's trial due to problems associated with her pregnancy. Petitioner contends that the prosecution failed to show that Ms. Baker's condition would not improve or stabilize. Ms. Baker's doctor, however, implied in his letter to the trial court that Ms. Baker would remain unavailable to testify. He ordered bed rest, and he stated that testifying would pose a "terrible risk" to Baker's unborn child. In the words of the Michigan Court of Appeals, "[t]here was no reasonable basis for inferring, as Tincher suggests, that Baker's problems would have resolved within a few days." *Tincher*, 2004 WL 1460687, at *2. The trial court therefore appropriately credited the doctor's written opinion that Ms. Baker's pregnancy rendered her unable to testify. *Cf. United States v. McGuire*, 307 F.3d 1192, 1205 (9th Cir. 2002) (concluding that it was appropriate for the trial court to credit a physician's written opinion that a witness who was twenty-eight weeks pregnant would be unable to undergo the stress of testimony). "There is nothing wrong with [a trial court's] relying on a physician's statement when assessing availability," for a pregnancy can pose "special risks for a mother and her unborn child that may be exacerbated by the stress of trial." *Id*.

Respondent has demonstrated that Ms. Baker was unavailable to testify, and, because Petitioner's former attorney had an opportunity to cross-examine Baker at the preliminary examination, the Confrontation Clause was not violated. Notably, Petitioner does not contend that his motive for cross examining Baker at the preliminary hearing was different from his motive at trial. The state court's finding that Petitioner's rights under the Confrontation Clause were not violated did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

-13-

C.

Petitioner alleges that his trial attorney was ineffective for failing to (a) call witnesses and present a defense to the armed robbery charge, (b) object to the prosecutor's mischaracterization of Natisha Baker's and Kevin McCallister's testimony, and (c) move for a continuance when Ms. Baker had problems with her pregnancy and could not appear in court. Petitioner contends that trial counsel's omissions prejudiced him and that his appellate attorney was ineffective for failing to present a claim about trial counsel's ineffectiveness on direct appeal.

1.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted).

-14-

2.

Petitioner alleges that his trial attorney failed to present a defense to the armed robbery charge and neglected to produce his friends as witnesses. According to Petitioner, his friends would have testified that the items supposedly stolen from Eric Cunningham actually belonged to Petitioner. This information, Petitioner contends, would have disproved the robbery charge and discredited Cunningham's testimony.

Although defense counsel did not put any witnesses on the stand, he did present a defense to the charges. He maintained that Eric Cunningham had not been a credible witness and that Cunningham was involved in drugs and was beaten by his suppliers because he cheated them out of money. Defense counsel also argued to the jury that the shoes, coat, and necklace allegedly taken from Eric Cunningham belonged to Petitioner. (Tr. Nov. 4, 2002, at 53-57.)

Petitioner has submitted affidavits from friends whom he claims defense counsel should have called at trial, but not all of the friends mention the coat, shoes, and necklace that supposedly belonged to Petitioner. And the affidavits that do mention these items do not refer to the other items that were taken from Eric Cunningham, namely, a knife, sword, Play Station, and money. As the trial court recognized, even if trial counsel had called the affiants as witnesses, they probably would not have been able to account for these additional items. The Court therefore finds that defense counsel was not ineffective for failing to call Petitioner's friends as witnesses.

3.

Petitioner alleges next that his trial attorney should have objected to the prosecutor's mischaracterization of Natisha Baker's and Kevin McCallister's testimony. Counsel did object to the prosecutor's comments about McCallister's testimony (Tr. Nov. 4, 2002, at 69), and the

prosecutor's remark about Natisha Baker's testimony was a reasonable inference from the evidence. Even if the remark about Ms. Baker's testimony was improper, it did not amount to flagrant misconduct. *See supra* section III.A.2.

Petitioner's underlying claims about the prosecutor's closing arguments lack merit. Therefore, trial counsel was not ineffective for failing to object to the remarks. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010), *petition for cert. filed*, No. 10-9276 (U.S. Feb. 24, 2011).

4.

Petitioner claims that trial counsel should have moved for a continuance when Ms. Baker had problems with her pregnancy and could not appear in court. Counsel was not required to move for a continuance because defense counsel made an adequate objection to the use of Ms. Baker's prior testimony and it is unlikely that the trial court would have adjourned the trial.

Defense counsel asked the trial court on the second day of trial to hold the proceedings in abeyance until the prosecution could obtain further information about Ms. Baker's condition. (Tr. Oct. 30, 2002, at 166-67.) The trial court conditionally granted the prosecution's request to use Ms. Baker's testimony from the preliminary examination, but asked for a future update on Ms. Baker's condition. (*Id*. at 170-72.) Defense counsel responded to this ruling by arguing that it would be legally incorrect to permit Ms. Baker not to testify absent medical documentation, and that, if Baker did not testify, her prior testimony should not be read into the record. Defense counsel also asked for permission to make an offer of proof that Ms. Baker had testified the way she did at the preliminary examination because Eric Cunningham had threatened to harm her and her daughter if

-16-

she did not testify in his favor.  (*Id*. at 176-80.)[2]  The trial court asked for medical documentation regarding Ms. Baker's condition and agreed to wait another day before making a ruling on the issue. (*Id*. at 182-83, 230-33.)

On the following day, defense counsel objected to an additional continuance, stating that the matter had been prolonged long enough.  Defense counsel argued that the prosecution should not be permitted to use the preliminary examination transcription if the prosecution could not produce documentation regarding Ms. Baker's condition.  (Tr. Oct. 31, 2002, at 6-7, 95-96.)  The prosecution ultimately produced medical documentation, and the trial court concluded that Ms. Baker was not available to testify.

It is clear from the record that defense counsel made a tactical decision to oppose the use of Ms. Baker's prior testimony rather than seek an additional continuance.  Furthermore, the trial court gave no indication that it was inclined to adjourn the trial indefinitely, and the use of Ms. Baker's prior testimony did not violate Petitioner's rights under the Confrontation Clause.  Defense counsel was not ineffective for failing to request an indefinite adjournment.

### 5.

Petitioner asserts that his appellate attorney was ineffective for failing to raise the above issues about trial counsel on direct review.  Petitioner was not entitled to compel his appointed attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  And because his "claim of ineffective assistance of trial counsel lacks merit, his appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d

---

[2]  The defendants were Ms. Baker's cousins.

741, 746 (6th Cir. 2003).

D.

Petitioner argues that the trial court erred by denying his request to endorse and call Jimmy

Baugh as a defense witness. Petitioner claims that the trial court's ruling violated his constitutional

rights to compulsory process and to present witnesses in his own defense.

The Michigan Court of Appeals explained the factual background for this claim as follows:

> Defendants did not present any witnesses. On the third day of trial, defendants' attorneys informed the trial court that they had discovered a new witness, and moved to add him to their witness lists. The witness, Jimmy Baugh, was an inmate in the Wayne County lockup and a defendant in an unrelated case. Defendants had met Baugh in the "bull pen" while being transported from the jail to their respective courtrooms. They learned that Baugh had a conversation with Cunningham, who was also in the jail, awaiting trial for a charge of reckless discharge of a firearm. Defendants contended that Cunningham told Baugh things that contradicted Cunningham's trial testimony.

> The trial court allowed defendants to make an offer of proof as to Baugh's testimony. Baugh testified that he had complained to Cunningham that his accomplices were testifying against him, and Cunningham replied that the same thing was happening to him. Cunningham then told Baugh that he had been selling drugs with some other men when their supplier demanded they return the drugs or pay for them. Cunningham did not have enough money, so he was beaten. The other men were later caught with drugs, and they were now trying to implicate Cunningham. Cunningham did not say anything about being robbed. Cunningham showed Baugh a scar on his hand. Baugh believed that Cunningham was a defendant in a drug case, and he did not know until the morning he talked to defendants that Cunningham was the complainant in an assault case.

> The trial court found Baugh's testimony irrelevant because it described an incident in which Cunningham was assaulted over a drug deal involving two other persons, and not the instant case. It denied defendants' request to add him to their witness list.

*Tincher*, 2004 WL 1460687, at *1-2.

The Michigan Court of Appeals determined that Baugh's proposed testimony was irrelevant

to the defendants' theory that someone other than the defendants injured the victim. The Court of

-18-

Appeals concluded that the trial court did not abuse its discretion in denying late endorsement of Baugh.

1.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution with "the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. This right "is applicable to the states through the Fourteenth Amendment." *Johnson v. Bell*, 525 F.3d 466, 480 n.13 (6th Cir. 2008) (citing *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. at 19.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense. Indeed, this right is an essential attribute of the adversary system itself." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citation omitted). Nevertheless, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (footnote, citations, and quotations marks omitted).

> While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such

-19-

as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (quotation marks and citations omitted) (alteration in original).

2.

Petitioner alleges that Baugh's testimony was crucial to the defense theory that Eric Cunningham was assaulted after a drug deal went sour. Petitioner maintains that the primary error in the trial court's evidentiary ruling was the court's conclusion that Baugh's testimony concerned an incident unrelated to the case being tried. However, as the Michigan Court of Appeals recognized,

> [t]he primary feature of Baugh's testimony was Cunningham's complaint that his accomplices in a drug delivery offense were trying to implicate Cunningham. There was no indication that Tincher or Mullins ever sold drugs with Cunningham, or that they tried to implicate Cunningham in any criminal activity. Although defendants argued that Baugh's testimony would reveal that Cunningham was falsely accusing Tincher and Mullins, Baugh never said anything about Cunningham making false accusations. On the contrary, Baugh did not even know that Cunningham was the complainant in an assault case.

*Tincher*, 2004 WL 1460687, at *4.

The Michigan Court of Appeals concluded that the trial court did not err in ruling that the defendants could not present Baugh as a witness. This Court agrees with the Court of Appeals, because Baugh's testimony could have confused the jurors and misled them.

Petitioner's right to present a defense was not violated by the trial court's decision to exclude only marginally relevant evidence that posed an undue risk of prejudice or confusion of the issues. *Holmes*, 547 U.S. at 326-27. Similarly, Petitioner's right to compulsory process was not violated,

-20-

because the trial court did not arbitrarily deny Petitioner "the right to put on the stand a witness

. . . whose testimony would have been relevant and material to the defense." *Washington v. Texas*,

388 U.S. at 23.

E.

Petitioner's fifth and final claim alleges that trial counsel was ineffective for failing to object

to the scoring of a prior record variable of the Michigan sentencing guidelines. Petitioner also

contends that his appellate attorney was ineffective for not challenging trial counsel's ineffectiveness

on this issue.

The sentencing factor in question is prior record variable (PRV) 1, which measures prior

high-severity felony convictions. *See* Mich. Comp. Laws § 777.51. Petitioner apparently was

scored twenty-five points for receiving and concealing property under $300 in Kentucky. Petitioner

contends that his Kentucky conviction should have been scored as a misdemeanor because, at

approximately the time when the offense was committed, legislators changed the dollar amount that

distinguished misdemeanors from felonies and the threshold amount for a felony was raised from

$100 to $1,000.

Petitioner has not provided any details about the date of his Kentucky offense or the effective

date of the legislature change in the law that distinguishes misdemeanors from felonies. Thus, this

aspect of Petitioner's claim fails.

Petitioner also alleges that the Kentucky crime was a low-severity felony for which he should

have been scored five points under PRV 2 (prior low-severity felony convictions) instead of twenty-

five points for a high-severity felony under PRV 1. Petitioner asserts that, if PRV 1 had been

properly scored at zero and PRV 2 were scored at five points, the recommended sentencing range

-21-

would be 108 to 225 months, not 126 to 210 months, as calculated by the probation department.

Trial counsel's failure to object to the allegedly incorrect PRV 1 does not mean that Petitioner necessarily suffered prejudice. *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007). To show prejudice, Petitioner must show a reasonable probability that, but for his attorney's alleged error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer*, 254 F. App'x at 525 (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

The trial court sentenced Petitioner to a minimum sentence of fourteen years for the armed robbery. This sentence fell within the recommended sentencing guidelines range of 126 to 210 months or ten and a half to seventeen and a half years. The sentence also fell within the sentencing guidelines range that Petitioner claims should have been used (108 to 225 months or nine to eighteen years, nine months). Thus, even if the trial court had calculated Petitioner's sentencing guidelines at nine to eighteen years, nine months, the court could have imposed the same sentence. And because there is nothing in the record to suggest that the trial court would have imposed a lesser sentence had PRV 1 been scored zero, there is no merit to Petitioner's claim that he was prejudiced by his trial and appellate attorneys' purported ineffectiveness. *Spencer*, 254 F. App'x at 526.

IV.

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not debate the Court's assessment of Petitioner's claims nor conclude that the claims deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 14, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-23-